UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

JANA RAE GRAHAM,                          Case No. 17-10841

     Plaintiff,                          Avern Cohn
      v.                               United States District Judge

COMMISSIONER OF SOCIAL                    Stephanie Dawkins Davis
SECURITY,                                 United States Magistrate Judge

     Defendant.
_____/

**REPORT AND RECOMMENDATION**
**CROSS-MOTIONS FOR SUMMARY JUDGMENT (Dkts. 12, 14)**

## I.    PROCEDURAL HISTORY

    A.    <u>Proceedings in this Court</u>

On March 16, 2017, plaintiff Jana Rae Graham filed the instant suit. (Dkt.

1). Pursuant to 28 U.S.C. § 636(b)(1)(B) and Local Rule 72.1(b)(3), District Judge

John Corbett O'Meara referred this matter to the undersigned for the purpose of

reviewing the Commissioner's unfavorable decision denying plaintiff's claim for a

period of disability and disability insurance benefits. (Dkt. 3). The case was

reassigned to District Judge Avern Cohn on July 3, 2018. *See* Text-Only Order

dated 7/3/2018. This matter is before the Court on cross-motions for summary

judgment. (Dkt. 12, 14).

B.     Administrative Proceedings

Plaintiff filed an application for a period of disability and disability insurance benefits on May 20, 2014, alleging disability beginning on August 15, 2013.  (Tr. 14).[1]  The claims were initially disapproved by the Commissioner on September 2, 2014.  (*Id.*).  Plaintiff requested a hearing and on October 20, 2015, plaintiff appeared with counsel, before Administrative Law Judge ("ALJ") Lawrence E. Blatnik, who considered the case *de novo*.  (Tr. 14-24).  In a decision dated December 17, 2015, the ALJ found that plaintiff was not disabled.  (Tr. 24). Plaintiff requested a review of this decision.  (Tr. 10).  The ALJ's decision became the final decision of the Commissioner when the Appeals Council, on January 24, 2017, denied plaintiff's request for review.  (Tr. 1-5); *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 543-44 (6th Cir. 2004).

For the reasons set forth below, the undersigned **RECOMMENDS** that plaintiff's motion for summary judgment be **DENIED**, that defendant's motion for summary judgment be **GRANTED**, and that the findings of the Commissioner be **AFFIRMED**.

---

[1] The Administrative Record appears on the docket at entry number 9.  All references to the same are identified as "Tr."

## II.    FACTUAL BACKGROUND

### A.    ALJ Findings

Plaintiff, born March 1, 2964, was 49 years old on the alleged disability

onset date.  (Tr. 23).  She has past relevant work as a property manager and

administrative assistant.  (Tr. 23).  Plaintiff resides with her husband and has a high

school education as well as two years of business school.  (Tr. 37).  The ALJ

applied the five-step disability analysis and found at step one that plaintiff had not

engaged in substantial gainful activity since August 15, 2013, the alleged onset

date.  (Tr. 16).  At step two, the ALJ found that plaintiff's degenerative disc

disease of the lumbar spine; gastroparesis; adhesive capsulitis of both shoulders;

and diabetes mellitus were "severe" within the meaning of the second sequential

step.  (*Id.*).  However, at step three, the ALJ found no evidence that plaintiff's

impairments singly or in combination met or medically equaled one of the listings

in the regulations.  (Tr. 18).

Thereafter, the ALJ assessed plaintiff's residual functional capacity ("RFC")

as follows:

> After careful consideration of the entire record, I find that
> the claimant has the residual functional capacity to
> perform light work as defined in 20 CFR 404.1567(b).
> The claimant can lift, carry, push and pull up to 20
> pounds occasionally and 10 pounds frequently.  In an
> eight-hour workday, she can sit, stand and walk all for at
> least six hours.  She can frequently reach overhead; never
> climb ladders and scaffolds; frequently climb ramps and

> stairs; occasionally stoop and crawl; and frequently
> balance, kneel, and crouch.  She is limited to only
> moderate noise levels and no exposure to bright lights.

(Tr. 18).  At step four, the ALJ found that plaintiff was unable to perform any past

relevant work.  (Tr. 22).  At step five, the ALJ denied plaintiff benefits because she

found that there were jobs that exist in significant numbers in the national economy

that plaintiff can perform.  (Tr. 23).

B.    Plaintiff's Claim of Error

Plaintiff argues that the ALJ failed to comply with the treating physician

rule.  The ALJ reviewed a medical source statement from physician's assistant Ms.

Garcia.  (Dkt. 12, at p. 3-4).  The ALJ found that the limitations found by Ms.

Garcia are not consistent with the record as a whole, and medical evidence does

not support her opinion that plaintiff would miss four or more days of work per

month.  Further, the ALJ stated that there are inconsistencies in the assessment,

including the fact that Ms. Garcia listed anxiety as a diagnosis but did not check

any identifying psychological conditions that would affect plaintiff's physical

condition.  Lastly, the ALJ declined to give Ms. Garcia's opinion controlling

weight because, as a physician's assistant, she is not a licensed physician and is not

considered to be a qualified medical source.  (*Id.*; Tr. 22).

Plaintiff asserts that Ms. Garcia's opinion was co-signed by Dr. Jennings,

her treating physician.  During the ALJ's questioning of the vocational expert,

plaintiff's attorney clarified on the record that Ms. Garcia's opinion was initialed by plaintiff's long-time treating physician Dr. Jennings, and so the opinion was signed by an "M.D." (*Id.* at p. 2). The ALJ thanked the attorney for pointing that out, and acknowledged that the initialing could make a significant difference. Plaintiff contends that this conversation between the ALJ and her attorney indicates that the ALJ acknowledged the treating physician rule. (*Id.* at p. 2).

According to the plaintiff, substantial evidence does not support the ALJ's decision to discount Dr. Jennings' opinion, although he did articulate some reasons why he did not credit Ms. Garcia's notations, namely the inconsistency between Garcia's findings and the medical record as a whole. (*Id.* at p. 5). Plaintiff contends that these kinds of conclusory statements do not satisfy the treating physician rule. Rather, plaintiff asserts that the medical record supports Dr. Jennings/Ms. Garcia's opinion: there are multiple records indicating weight loss and vomiting. (*Id.* at p. 4). Plaintiff also testified to having uncontrolled vomiting and that she has about two vomiting episodes per week. (*Id.*). As such, the ALJ erred in not according Garcia's opinion controlling weight.

C.    Commissioner's Motion for Summary Judgment

The Commissioner argues that substantial evidence supports the ALJ's assessment of the physician's assistant's opinion. (Dkt. 14, at p. 3). The Commissioner agrees that there is a signature on the medical source statements, but

argues that it is illegible and not clear whether it is Dr. Jennings's initials. (*Id.* at p. 4); Tr. 435). However, even assuming Dr. Jennings did co-sign the opinion, the Commissioner argues that the ALJ's analysis still does not change. First, it does not appear that Dr. Jennings ever actually examined plaintiff. Dr. Jennings' name appears on various records, often indicating that he was copied on a record, or listed as plaintiff's primary care physician, and once listed as the head of the practice. (*Id.* at p. 5; citing Tr. 220-223, 226, 228, 236, 239-242, 244, 284, 296, 311, 327, 335, 347, 475, 478, 483, 497, 518-519, 580). Second, even if Dr. Jennings reviewed Ms. Garcia's report, then Dr. Jennings is no different from a reviewing physician in assessing plaintiff's condition. Thus, the rationale for affording greater weight to an opinion of a treating source, who would have a unique perspective and familiarity with the claimant, does not apply. (*Id.* at p. 5, citing *Helsel v. Comm's of Soc. Sec.*, No. 15-13599, 2016 WL 6070085, at *8 (E. D. Mich. Sept. 7, 2016)).

The Commissioner also argues that the ALJ properly discounted the opinion because he noted that Ms. Garcia's opinion was internally inconsistent and inconsistent with other record evidence. (*Id.* at p. 5-6). While plaintiff did receive treatment for persistent bouts of vomiting, the record indicates that on at least one occasion the vomiting was related to medication she was taking (Tr. 56), and at one point indicated that her vomiting responded favorably to changes in her diet.

(*Id.* at p. 6; citing *Mullen v. Bowen*, 800 F.2d 535, 547–48 (6th Cir. 1986) (en banc) (pain which is responsive to treatment with medication is not disabling); *Houston v. Sec'y of Health & Human Servs.*, 736 F.2d 365, 367 (6th Cir. 1984) ("The medical evidence reflected that appellant's impairments were controlled with medication and were not seriously disabling")).

Lastly, citing *Schacht v. Comm'r of Soc. Sec.*, 2016 WL 2733140, at *5 (E.D. Mich. May 5, 2016), rep. & rec. adopted, 2016 WL 5219540 (E.D. Mich. Sept. 22, 2016) ("[S]tatement that Schacht would miss work several days per week is not a valid medical opinion"), the Commissioner contends that opinions on issues such as absences from work are mere conjecture and do not constitute valid medical opinions.  (*Id.*).

## III.   DISCUSSION

### A.   Standard of Review

In enacting the social security system, Congress created a two-tiered system in which the administrative agency handles claims, and the judiciary merely reviews the agency determination for exceeding statutory authority or for being arbitrary and capricious.  *Sullivan v. Zebley*, 493 U.S. 521 (1990).  The administrative process itself is multifaceted in that a state agency makes an initial determination that can be appealed first to the agency itself, then to an ALJ, and finally to the Appeals Council.  *Bowen v. Yuckert*, 482 U.S. 137 (1987).  If relief is

not found during this administrative review process, the claimant may file an action in federal district court. *Mullen v. Bowen*, 800 F.2d 535, 537 (6th Cir.1986).

This Court has original jurisdiction to review the Commissioner's final administrative decision pursuant to 42 U.S.C. § 405(g). Judicial review under this statute is limited in that the court "must affirm the Commissioner's conclusions absent a determination that the Commissioner has failed to apply the correct legal standard or has made findings of fact unsupported by substantial evidence in the record." *Longworth v. Comm'r of Soc. Sec.*, 402 F.3d 591, 595 (6th Cir. 2005); *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 528 (6th Cir. 1997). In deciding whether substantial evidence supports the ALJ's decision, "we do not try the case de novo, resolve conflicts in evidence, or decide questions of credibility." *Bass v. McMahon*, 499 F.3d 506, 509 (6th Cir. 2007); *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984). "It is of course for the ALJ, and not the reviewing court, to evaluate the credibility of witnesses, including that of the claimant." *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 247 (6th Cir. 2007); *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 475 (6th Cir. 2003) (an "ALJ is not required to accept a claimant's subjective complaints and may . . . consider the credibility of a claimant when making a determination of disability."); *Walters*, 127 F.3d at 531 ("Discounting credibility to a certain degree is appropriate where an ALJ finds contradictions among medical reports, claimant's testimony, and other evidence.").

"However, the ALJ is not free to make credibility determinations based solely upon an 'intangible or intuitive notion about an individual's credibility.'" *Rogers*, 486 F.3d at 247, quoting Soc. Sec. Rul. 96-7p, 1996 WL 374186, *4.

If supported by substantial evidence, the Commissioner's findings of fact are conclusive.  42 U.S.C. § 405(g).  Therefore, this Court may not reverse the Commissioner's decision merely because it disagrees or because "there exists in the record substantial evidence to support a different conclusion." *McClanahan v. Comm'r of Soc. Sec.*, 474 F.3d 830, 833 (6th Cir. 2006); *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986) (*en banc*).  Substantial evidence is "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Rogers*, 486 F.3d at 241; *Jones*, 336 F.3d at 475.  "The substantial evidence standard presupposes that there is a 'zone of choice' within which the Commissioner may proceed without interference from the courts." *Felisky v. Bowen*, 35 F.3d 1027, 1035 (6th Cir. 1994) (citations omitted), citing, *Mullen*, 800 F.2d at 545.

The scope of this Court's review is limited to an examination of the record only.  *Bass*, 499 F.3d at 512-13; *Foster v. Halter*, 279 F.3d 348, 357 (6th Cir. 2001).  When reviewing the Commissioner's factual findings for substantial evidence, a reviewing court must consider the evidence in the record as a whole, including that evidence which might subtract from its weight. *Wyatt v. Sec'y of*

*Health & Human Servs.*, 974 F.2d 680, 683 (6th Cir. 1992). "Both the court of appeals and the district court may look to any evidence in the record, regardless of whether it has been cited by the Appeals Council." *Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 535 (6th Cir. 2001). There is no requirement, however, that either the ALJ or the reviewing court must discuss every piece of evidence in the administrative record. *Kornecky v. Comm'r of Soc. Sec.*, 167 Fed. Appx. 496, 508 (6th Cir. 2006) ("[a]n ALJ can consider all the evidence without directly addressing in his written decision every piece of evidence submitted by a party.") (internal citation marks omitted); *see also Van Der Maas v. Comm'r of Soc. Sec.*, 198 Fed. Appx. 521, 526 (6th Cir. 2006).

B.   <u>Governing Law</u>

The "[c]laimant bears the burden of proving his entitlement to benefits." *Boyes v. Sec'y of Health & Human Servs.*, 46 F.3d 510, 512 (6th Cir. 1994); *accord*, *Bartyzel v. Comm'r of Soc. Sec.*, 74 Fed. Appx. 515, 524 (6th Cir. 2003). There are several benefits programs under the Act, including the Disability Insurance Benefits Program of Title II (42 U.S.C. §§ 401 *et seq*.) and the Supplemental Security Income Program of Title XVI (42 U.S.C. §§ 1381 *et seq*.). Title II benefits are available to qualifying wage earners who become disabled prior to the expiration of their insured status; Title XVI benefits are available to poverty stricken adults and children who become disabled.  F. Bloch, Federal

Disability Law and Practice § 1.1 (1984).  While the two programs have different

eligibility requirements, "DIB and SSI are available only for those who have a

'disability.'"  *Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007).  "Disability"

means:

> inability to engage in any substantial gainful activity by
> reason of any medically determinable physical or mental
> impairment which can be expected to result in death or
> which has lasted or can be expected to last for a
> continuous period of not less than 12 months.

42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A) (DIB); *see also* 20 C.F.R. § 416.905(a)

(SSI).

The Commissioner's regulations provide that disability is to be determined

through the application of a five-step sequential analysis:

> Step One:  If the claimant is currently engaged in
> substantial gainful activity, benefits are denied without
> further analysis.
>
> Step Two:  If the claimant does not have a severe
> impairment or combination of impairments, that
> "significantly limits ... physical or mental ability to do
> basic work activities," benefits are denied without further
> analysis.
>
> Step Three:  If plaintiff is not performing substantial
> gainful activity, has a severe impairment that is expected
> to last for at least twelve months, and the severe
> impairment meets or equals one of the impairments listed
> in the regulations, the claimant is conclusively presumed
> to be disabled regardless of age, education or work
> experience.

> Step Four:  If the claimant is able to perform his or her past relevant work, benefits are denied without further analysis.
>
> Step Five: Even if the claimant is unable to perform his or her past relevant work, if other work exists in the national economy that plaintiff can perform, in view of his or her age, education, and work experience, benefits are denied.

*Carpenter v. Comm'r of Soc. Sec.*, 2008 WL 4793424 (E.D. Mich. 2008), citing, 20 C.F.R. §§ 404.1520, 416.920; *Heston*, 245 F.3d at 534.  "If the Commissioner makes a dispositive finding at any point in the five-step process, the review terminates."  *Colvin*, 475 F.3d at 730.

"Through step four, the claimant bears the burden of proving the existence and severity of limitations caused by her impairments and the fact that she is precluded from performing her past relevant work." *Jones*, 336 F.3d at 474, cited with approval in *Cruse*, 502 F.3d at 540.  If the analysis reaches the fifth step without a finding rejecting the existence of disability, the burden transfers to the Commissioner.  *Combs v. Comm'r of Soc. Sec.*, 459 F.3d 640, 643 (6th Cir. 2006). At the fifth step, the Commissioner is required to show that "other jobs in significant numbers exist in the national economy that [claimant] could perform given [his] RFC and considering relevant vocational factors." *Rogers*, 486 F.3d at 241; 20 C.F.R. §§ 416.920(a)(4)(v) and (g).

If the Commissioner's decision is supported by substantial evidence, the decision must be affirmed even if the court would have decided the matter differently and even where substantial evidence supports the opposite conclusion. *McClanahan*, 474 F.3d at 833; *Mullen*, 800 F.2d at 545.  In other words, where substantial evidence supports the ALJ's decision, it must be upheld.

C.   Analysis and Conclusions

The parties disagree on whether Dr. Jennings signed the medical source statement.  Considering the facts surrounding the opinion, it appears that Dr. Jennings is the one who initialed the opinion.  First, at the top of the opinion, the document notes "From: Dr. Larry Jennings."  (Tr. 432).  Second, the initial appears to be a "J" followed by "MD," which would indicate Dr. Jennings.  (Tr. 435).  And the ALJ seemed to accept that the initials were that of Dr. Jennings at the time of plaintiff's hearing.  (Tr. 75).  As such, it is reasonable to conclude that the opinion was co-signed by an acceptable medical source.  This raises the question of whether Dr. Jennings should be considered a treating physician.[2]  However, under the circumstances of this case a definitive conclusion on his status need not be

_____

[2] While the Disability Report states that plaintiff had been treating with Jennings since 1975, there is nothing in the record signed by him other than his initial "J" on the Garcia opinion. He is copied on a few records; he referred plaintiff to a couple of specialists; and he is listed as the primary care physician on two medical records (but so is another doctor, *see e.g.* Tr. 379). Thus, there are factors supporting (length of relationship, notation as primary care doctor) and detracting from (apparent paucity of visits and dearth of opinions attributable to him) a conclusion that he qualifies as a treating physician.  The detracting factors do much to render his status questionable.

13

drawn, because even if the ALJ should have treated the opinion as that of a treating physician, any error in failing to do so is harmless because the ALJ met the goals of the regulation as discussed more fully below.

The opinion of a treating physician should be accorded controlling weight if it is:  (1) "well-supported by medically acceptable clinical and laboratory diagnostic techniques," and (2) "not inconsistent with the other substantial evidence in [the] case record."  *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 544 (6th Cir. 2004); 20 C.F.R. § 404.1527(c)(2).  Once an ALJ has determined that a treating source opinion is not entitled to controlling weight, the ALJ must give good reasons for the weight assigned to the opinion.  The reasons provided must be supported by the evidence in the case record, and must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight.  *Gayheart v. Comm'r of Soc. Sec*., 710 F.3d 365, 376 (6th Cir. 2013).  The ALJ is to discuss certain factors, which include, (1) the length of the treatment relationship and frequency of examination, (2) the nature and extent of the treatment relationship, (3) supportability of the opinion, (4) consistency of the opinion with the record as a whole, and (5) the specialization of the treating source.  *Id.; see also Wilson,* 378 F.3d at 544; 20 C.F.R. § 404.1527(c).  Failure to analyze a treating source opinion

14

under the two-prong controlling weight test amounts to the failure to provide good reasons for giving that opinion less than controlling weight. *Gayheart* at 376-77.

"Violation of the [treating physician rule] constitutes harmless error if the ALJ has met the goals of the procedural requirement—to ensure adequacy of review and to permit the claimant to understand the disposition of his case—even though he failed to comply with the regulation's terms." *Coldiron v. Comm'r of Soc. Sec.*, 391 Fed. Appx. 435, 440 (6th Cir. 2010) (citing *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 547 (6th Cir. 2004). An ALJ may meet those goals by indirectly attacking the supportability of the treating physician's opinion or its consistency with other evidence in the record. *See Nelson v. Comm'r of Soc. Sec.*, 195 Fed. Appx. 462, 470-72 (6th Cir. 2006) (no error in ALJ's failure to explain weight given to two treating physicians or failure to give good reasons for discounting them where ALJ thoroughly explained other medical evidence that indirectly attacked the consistency of the treating physicians' opinions). In *Coldiron*, the court held that even if the ALJ's stated reasons for rejecting a physician's opinion were not "good reasons," the ALJ sufficiently indirectly attacked the supportability and consistency of the opinion such that any error was harmless. 391 Fed. Appx. at 440-41. The court found that the ALJ indirectly attacked the consistency of the opinion that the plaintiff could not lift or carry any weight at all, when the ALJ explained that the state agency physicians found that

the plaintiff lacked a "diminished capacity for lifting/carrying." *Id*. And although

the physician stated that plaintiff could walk for only twenty minutes in an eight-

hour workday and his ability to sit was limited, other medical evidence showed

that he could stand and sit for six hours out of eight. *Id*. at 441. Further, the

plaintiff's own statements also undermined the doctor's opinion. *Id*.

In addressing the medical source statement from Ms. Garcia and, perhaps,

Dr. Jennings, the ALJ stated,

> No physician has imposed a work preclusive limitation
> on claimant's functioning, or opined that she was totally
> disabled. I have considered the medical source statement
> completed by physician's assistant, Coreen Garcia
> (Exhibit 17F). However, the limitations found by Ms.
> Garcia are not consistent with the record as a whole, and
> medical evidence does not support her opinion that the
> claimant would miss four or more work days a month.
> Further, there are inconsistencies in her assessment,
> including the fact that Ms. Garcia listed a diagnosis of
> anxiety, but later in the source statement, she did not
> check any identifying psychological conditions that
> would affecting the claimant's physical condition.
> Further, the opinion of physician assistant Ms.
> Garcia is not given controlling weight as she is not a
> licensed physician and not considered to be a qualified
> medical source.

(Tr. 22). The opinion included the following diagnoses concerning plaintiff's

impairments: gastroparesis, diabetes mellitus type II, anxiety, migraines, lumbar

disc herniation, and chronic kidney disease. (Tr. 432). The opinion did not

attribute any psychological effects on the physical impairments. (Tr. 433). Ms.

16

Garcia noted that plaintiff could stand/walk for less than two hours and sit for about four hours in a workday, and that because of pain, vomiting, and migraines plaintiff would need to take 15-minute breaks every hour.  (*Id.*).  Ms. Garcia noted that plaintiff could occasionally lift ten pounds but never lift twenty pounds (Tr. 434), that plaintiff would be off task about 25% of the workday, and that plaintiff would miss more than four days of work per month due to migraines and vomiting. (Tr. 435).

Here, although the ALJ explained that the opinion was not consistent with the record as a whole, and that the opinion concerning missed days was not supported in the record, the ALJ did not engage in a fulsome "good reasons" analysis under *Gayheart*.  However, elsewhere in the decision the ALJ discussed the medical evidence in the record which undermines the supportability of the opinion and the consistency of the opinion with the other evidence in the record. Having done so, the ALJ has met the goal of the treating physician rule under the principles of *Coldiron*.

For example, while the opinion indicates that plaintiff would miss more than four days of work and would need to take breaks every hour due to vomiting and migraines, the record evidence does not support these limitations.  As the ALJ

discussed (Tr. 16-17),[3] in April 2013, plaintiff's neurologist diagnosed her with

chronic migraine and started her on Topamax. (Tr. 270). Three months later, in

July 2013 plaintiff reported improvement in her symptoms and that she had only

had two mild headaches since the April visit. (Tr. 272). By March 2014, her

migraines were reported to be well-controlled. (Tr. 274). Reports through April

2015 show that her headaches continued to be controlled and she denied any

complaints. (Tr. 429-30, 512-13). Moreover, there is no indication in the record

that between April 2015 and the date of the opinion, September 2015, her

migraines became uncontrolled or otherwise worsened. As to her vomiting,

plaintiff cites instances in the record in which she complained of vomiting and her

testimony at the administrative hearing that she has uncontrolled vomiting. (Dkt.

12, at p. 6-7). Notably, the ALJ found plaintiff's account of her limitations to be

not entirely credible. (Tr. 21). Plaintiff has not challenged this determination; nor

has she pointed to medical evidence demonstrating functional limitations caused

by her vomiting or gastroparesis. As discussed by the ALJ, the medical evidence

contains a note form a nurse practitioner indicating that plaintiff did not seem to

---

[3] The ALJ discussed the medical evidence relating to plaintiff's migraines at Step Two.
The Sixth Circuit has repeatedly emphasized the need to review the ALJ's decision
as a whole. "It is proper to read the ALJ's decision as a whole" and "it would be a needless
formality to have the ALJ repeat substantially similar factual analyses" at both Steps Two and
Four. *Rice v. Barnhart*, 384 F.3d 363, 370 n.5 (7th Cir. 2004); *see also Kornecky v. Comm'r of
Soc. Sec.*, 167 Fed. Appx. 496, 508 (6th Cir. 2006) ("An ALJ can consider all the evidence
without directly addressing in his written decision every piece of evidence submitted by a
party").

understand the cause and effect of her food choices on her stomach pain and that she consumes large quantities of iced tea and Mountain Dew.  (Tr. 20, 385). Plaintiff also reported that her gastroparesis improved with frequent small meals. (Tr. 395).  In March 2014, plaintiff underwent an EGD test for her gastroparesis. (Tr. 253).  The procedure revealed antral erosions, status-post cold forceps biopsy and atrophy noted in the duodenal bulb and "second portion."  (Tr. 254).  The physician recommended that plaintiff follow up with biopsy results, consider taking Prilosec on a daily basis for 4 to 6 weeks, and follow-up with Dr. Angeloff-Kupetz in 4 weeks, but did not mention any limitations.  (*Id.*).  This record evidence undermines the supportability of the opinion that plaintiff is limited in her ability to work due to migraines and vomiting as they do not suggest any functional limitations attributed to the impairments.

While the Garcia/Jennings opinion would limit plaintiff's lifting, crouching, standing and sitting more severely than does the RFC,[4] the ALJ explained that there is a lack of significant positive objective findings on her back pain, shoulder pain, migraines, and vomiting.  For example, although plaintiff was diagnosed with adhesive capsulitis in her shoulders, in February 2014 she underwent manipulation under anesthesia of both shoulders.  (Tr. 20; 244-45).  In a follow-up, the physician

---

[4] The opinion is consistent with the RFC in that it limits twisting and climbing ladders and stairs to frequently.  (Tr. 434).

noted significantly improved range of motion (Tr. 259) and recommended that she engage in aggressive home exercise and stretching.  (Tr. 257).  As for her back pain, the ALJ discussed that a 2010 MRI which showed L5-S1 disc herniation and degeneration from L3 to S1, and no nerve root compression.  (Tr. 20; 224).  She had been treated with epidural blocks through November 2012 (Tr. 224).  In November 2012, straight-leg raising test was positive, but there was no weakness. (Tr. 224).  The ALJ cited an April 2014 MRI which showed mild to moderate disc degeneration and no nerve root compression, however, this is actually the April 2010 MRI discussed above.  An MRI in October 2014 showed disc bulge at L4-L5 and L5-S1, and moderate right and moderate to severe left neuroforaminal narrowing.  (Tr. 584).  Still, the ALJ is correct that no physician suggested that objective findings on her impairments caused limitations greater than in the RFC. Further, while Ms. Garcia opined that plaintiff would be limited due in part to her back pain (but makes no mention of shoulder problems), none of the treatment records signed by Garcia discussed problems associated with her back.  (Tr. 370-71, 371-72, 451, 452, 498, 504).  The ALJ discussed inconsistency in Ms. Garcia's assessment.  Inconsistencies also appear between the opinion and the treatment records with Ms. Garcia.  Treatment records in 2015 (after the latest MRI) indicate low back pain with an onset date of April 2010, but otherwise there is no discussion of back problems in the record.  (Tr. 464-68, 470-74, 487-91, 492-96,

498-505).  When plaintiff presented to Ms. Garcia for her disability paperwork in September 2015, Ms. Garcia assessed "lumbago," refilled her tramadol prescription, and noted her pain score as 0/10.  (Tr. 508-09).  The record evidence thus undermines the supportability and consistency of the opinion in this regard as well.

Regarding plaintiff's diabetes, the ALJ discussed evidence indicating that the condition was controlled.  (Tr. 21).  The record shows that, in December 2014 and June 2015, her diabetes was diet-controlled.  (Tr. 399, 402).  In September 2014, treatment records indicate that her diabetes was improving and was managed with oral medications.  (Tr. 436).  In August 2015, her diabetes was noted as stable.  (Tr. 498).  In January and February 2016, her diabetes was noted to be "without complication."  (Tr. 527, 529).

The medical records on plaintiff's kidney disease also fail to show complications that would limit her ability to work, as suggested in the opinion.  For example, in a September 2014 ultrasound of her kidneys, both kidneys had normal corticomedullary differentiation and cortical thickness.  The doctor noted that her kidney disease was likely secondary to diabetes nephropathy, and there was no stone, mass, or collecting system dilatation.  (Tr. 400).  In a June 2015 nephrology (kidney) follow-up, plaintiff's "serum free light chains" were elevated but within normal limits, consistent with kidney disease, and no problems associated with her

kidney disease were noted.  (Tr. 402).  These records also undermine the

supportability of the opinion.

As noted above, the opinion does not identify any psychological conditions

affecting her physical impairments, despite listing anxiety as one of her diagnoses.

(Tr. 433).  Indeed, the opinion does not indicate any functional limitations due to

the mental impairment.

For the foregoing reasons, even if error occurred in the ALJ's failure to treat

the opinion as one coming from a treating physician in accord with the treating

physician rule, the ALJ's discussion of the medical evidence meets the goal of the

regulation—to ensure adequacy of review and to permit the claimant to understand

the disposition of his case.  *Coldiron*, 391 Fed. Appx. at 440.  The ALJ relied on

record evidence sufficient to undermine the supportability and consistency of the

opinion.  Not only did the ALJ's analysis sufficiently indirectly attack the opinion,

but in doing so the ALJ also provided substantial evidence to support discounting

the weight given to the opinion.

Moreover, if Dr. Jennings should not be considered a treating physician (or

even if it was not Dr. Jennings who co-signed the opinion, but some other

physician), the ALJ still sufficiently attacked the supportability and consistency of

the opinion.  "[T]he ALJ is not required to give 'good reasons' for rejecting a

nontreating source's opinions in the same way as must be done for a treating

22

source." *Chandler v. Comm'r of Soc. Sec.*, 2014 WL 2988433, at *8 (S.D. Ohio July 1, 2014). "Instead, for nontreating sources, the Commissioner weighs these opinions based on a number of factors including: the examining relationship (or lack thereof), specialization, consistency, and supportability." *Jackson v. Comm'r of Soc. Sec.*, 2015 WL 5634671, at *8 (S.D. Ohio Sept. 25, 2015) (citing 20 C.F.R. §§ 404.1527(c), 416.927(c)). As demonstrated above, the ALJ sufficiently addressed the supportability and consistency of the opinion with the rest of the medical evidence, sufficient to the meet the goal of the higher-standard treating physician rule. As such, any error in the weight determination is harmless.

## IV.    RECOMMENDATION

For the reasons set forth above, the undersigned **RECOMMENDS** that plaintiff's motion for summary judgment be **DENIED**, and that defendant's motion for summary judgment be **GRANTED**, and that the findings of the Commissioner be **AFFIRMED**.

The parties to this action may object to and seek review of this Report and Recommendation, but are required to file any objections within 14 days of service, as provided for in Federal Rule of Civil Procedure 72(b)(2) and Local Rule 72.1(d). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Sec'y of Health and Human Servs.*, 932 F.2d 505 (6th Cir. 1981). Filing objections that raise some

issues but fail to raise others with specificity will not preserve all the objections a party might have to this Report and Recommendation.  *Willis v. Sec'y of Health and Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987).  Pursuant to Local Rule 72.1(d)(2), any objections must be served on this Magistrate Judge.

Any objections must be labeled as "Objection No. 1," "Objection No. 2," etc.  Any objection must recite precisely the provision of this Report and Recommendation to which it pertains.  Not later than 14 days after service of an objection, the opposing party may file a concise response proportionate to the objections in length and complexity.  Fed.R.Civ.P. 72(b)(2), Local Rule 72.1(d). The response must specifically address each issue raised in the objections, in the same order, and labeled as "Response to Objection No. 1," "Response to Objection No. 2," etc.  If the Court determines that any objections are without merit, it may rule without awaiting the response.

Date: August 20, 2018                              s/Stephanie Dawkins Davis
                                                   Stephanie Dawkins Davis
                                                   United States Magistrate Judge

## <u>CERTIFICATE OF SERVICE</u>

I certify that on August 20, 2018, I electronically filed the foregoing paper with the Clerk of the Court using the ECF system, which will send electronic notification to all counsel of record.

s/Tammy Hallwood
Case Manager
(810) 341-7850
tammy_hallwood@mied.uscourts.gov
